IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| S. Gregory Hays, Receiver for Parish Economics, LLC.; | Civil No. 2:10-CV-1135-DCN |
| and | |
| Hermine "Bunny" Martin, Claudia B. Fitzgerald, and Jo An Brandt, on behalf of themselves and a class of similarly situated persons, | **ORDER AND OPINION** |
| Plaintiffs, | |
| vs. | |
| Robert B. Pearlman, and Pearlman & Pearlman, Attorneys at Law, P.C., d/b/a Pearlman & Pearlman, P.C., | |
| Defendants. | |

This matter is before the court on defendants' motion to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). Plaintiffs allege, with respect to both the receiver and the putative class, that defendants committed professional malpractice and breached fiduciary duties while defendants represented Parish Economics. Putative class plaintiffs further allege that defendants committed the tort of negligent misrepresentation. Defendants argue that putative class plaintiffs fail to state a claim for professional malpractice because no attorney-client relationship existed between defendants and putative class members and there was no breach of fiduciary duty to the putative class because the class members were not

1

beneficiaries of the Albert E. Parish Charitable Remainder Unitrust ("Trust").
Defendants argue that putative class plaintiffs' negligent misrepresentation claim should fail because defendants made no representations to the class and the class's loss was caused by the purchase of Parish's valueless securities. Defendants assert that the receiver's professional malpractice and breach of fiduciary duty claims are barred by the doctrines of *in pari delicto* and unclean hands, as well as the statute of limitations. For the reasons set forth below, the court grants in part and denies in part defendants' motion.

## I. BACKGROUND

On April 1, 2010, plaintiffs filed a complaint in Charleston County.[1] The complaint alleges that prior to 1996, defendant Pearlman established "Parish Economics as the corporate structure of [Albert E.] Parish's investment business," and thereafter, defendant Pearlman was the attorney for Parish Economics, Albert E. Parish ("Parish"), and the investor members of Parish Economics, in addition to being a trustee for the Trust.[2] Compl. ¶¶ 27-28.

---

[1] Hays v. Robert B. Pearlman, Case No. 2010-CP-10-2746. Putative class members are individuals and entities that lost more than one hundred dollars in investment pools managed by Albert E. Parish ("Parish") and Parish Economics and were either members of Parish Economics or contingent beneficiaries of the Trust. The putative class does not include Parish or members of Parish's immediate family. Plaintiff receiver has joined the putative class in two causes of action.

[2] Plaintiffs' complaint acknowledges, however, that defendant Pearlman did not solicit putative class plaintiffs to purchase any interest in, or securities offered by, Parish Economics, nor did he sell any interest or securities. Compl. ¶ 29.

Plaintiffs allege that in January 1997, Parish sent a letter to each "Parish Economics Pool Member" announcing the creation of Parish Economics, Limited Liability Company (LLC).[3] The letter referred to defendant Pearlman as Parish's tax attorney, "the very best in the business," and the letter explained that life insurance policies on Parish's life would be obtained by the LLC to redeem investments in the event of Parish's death. Compl. ¶ 30. The letter stated that the policies would be owned by the LLC and "you the investors as stockholders of Parish Economics." Compl. ¶ 30. Defendants state that the Trust was created in May of 2002 to serve the purpose Parish described in this letter. The trustees, defendant Pearlman and Daniel O. Legare, then entered into a buy-sell agreement, whereby the Trust agreed to purchase the assets of Parish Economics upon the death of Parish with the life insurance proceeds. The life insurance proceeds would "enable the orderly liquidation of the pools," and the investors agreed to this procedure in the pool agreements. Mot. Dismiss 7. Defendants state that the only beneficiaries of the Trust were Parish's wife, Yolanda Yoder, the children of Yoder and Parish upon Yoder's death, and The Parish Foundation, Inc., a non-profit charitable organization, as the remainder interest holder. Defendants admit that defendant Pearlman met with some investors in or about August 2005 to discuss the liquidation provision of the investment pool agreement.

According to plaintiffs, as early as March 1997, defendant Pearlman knew that the membership interests in Parish Economics would likely be considered securities under

---

[3]Defendants allege that Parish Economics had only two actual members pursuant to the LLC operating agreement, Parish and his wife, Yolanda Yoder.

South Carolina and federal law, requiring registration, and he referred Parish to a securities lawyer. Despite defendant Pearlman's knowledge regarding this issue, he assisted Parish in preparing a letter to the South Carolina Attorney General, requesting a "no action" letter, in which Parish "falsely represented to the South Carolina Securities Commission that he did not receive any commission or management fee for operating the investment pools, that he did not solicit investors in the pool." Compl. ¶ 33. Parish also failed to inform the securities commission that out-of-state members invested in the investment pools.

In May 1997, Parish received the "no action" letter from the attorney general's office stating that the South Carolina Attorney General's Securities Section would not take any enforcement action against Parish's transaction, which was understood as involving no more than twenty-five investors, that "no commission or other remuneration will be paid . . . for soliciting any prospective non-institutional investor," and that no offerings would be made to individuals outside of South Carolina. Compl. ¶ 34. Plaintiffs claim that defendant Pearlman knew or suspected all of these understandings to be false and that the investment offerings should have been registered with the South Carolina and federal securities commissions, in violation of Model Rule of Professional Conduct 1.13 and South Carolina Rule of Professional Conduct (SCRPC) 407. Plaintiffs assert that defendant Pearlman did not take any action to register the investments himself, to further investigate the facts surrounding the investment offering, or to notify any other member of Parish Economics or any authorities regarding Parish's conduct.

In May 2002, defendant Pearlman created and accepted the position as a trustee for the Trust, allegedly for the benefit of the Parish Economics investors. Defendant Pearlman "voluntarily" accepted this position even though he recognized that he was subjecting himself to "high liability." Compl. ¶ 39.

In 2003, defendant Pearlman helped Parish form Summerville Hard Assets, another South Carolina LLC, which served as one of Parish's investment vehicles. Plaintiffs allege that both Parish and Pearlman "enticed individuals with significant investment capital to invest" in this entity. Compl. ¶ 47.

Plaintiffs allege that defendant Pearlman has admitted knowing the following facts, yet he did nothing to protect Parish Economics and its investors and beneficiaries: (1) more than fifty-five million dollars had been invested with Parish as of 2001; (2) he suspected that Parish Economics had more than twenty-five investors; (3) premiums for the life insurance policies on Parish's life were paid out of pooled investment funds pursuant to the Trust created for the benefit of the investor members; (4) Parish was unwilling to submit to an external audit as of 2004; (5) a large percentage of Parish's investors were out-of-state investors; (6) by late 2004, there were three-hundred seventy-seven investors with approximately forty-one million dollars invested; (7) by late 2004, Pearlman became increasingly concerned about Parish's compliance with securities laws; (8) by late 2004, Pearlman thought that a "mini-audit" would be beneficial to Parish Economics; (9) the number of investors and the amount of invested monies "skyrocketed in 2005 and 2006"; (10) in or about 2005, Pearlman was aware that Parish operated the investment pools and solicited investments through the "Economan" web site; (11) by

late 2005, Pearlman was aware that there were four-hundred nine reported investors in Parish Economics with investments totaling approximately sixty-three million dollars; and (12) by 2006, Pearlman was aware that Parish was no longer cooperating with his accountant. Compl. ¶ 42. Plaintiffs state that defendant Pearlman never took steps to withdraw from representing Parish or Parish Economics or to withdraw as a trustee of the Trust. They state that Pearlman simply accepted Parish's justification for not registering the securities and continued his representation.

On April 4, 2007, the Securities and Exchange Commission (SEC) filed a complaint seeking injunctive relief against Parish and the entities he formed, alleging violations of the Exchange Act and the Investment Advisors Act of 1940. The next day, this court froze the assets of Parish and his related entities. This court also appointed plaintiff receiver to account for all of the assets held by Parish and his related entities.

Shortly thereafter, the receiver issued a report reflecting that Parish had operated a Ponzi scheme, in which he paid his initial investors with investment capital provided by subsequent investors rather than paying them with proceeds earned from legitimate investments. The receiver determined that monies provided by investors were not properly segregated into investment pools or accounts. Instead, they were used to purchase hard assets and fund Parish's extravagant lifestyle. In addition, Parish made false statements to an SEC investigator regarding monies allegedly invested in several brokerage accounts.

Based on the facts alleged above, plaintiffs assert five claims against defendants. First, plaintiff receiver asserts a professional malpractice claim for: drafting and

delivering life insurance trust documents when defendants knew or should have known that Parish would use the documents in his Ponzi scheme, in violation of SCRPC 1.2(d); by continuing to assist Parish in conduct which defendants should have learned through due diligence was criminal or fraudulent, in violation of SCRPC 1.2(d), thereby causing damage to Parish Economics; by failing to report Parish's unlawful conduct, in violation of SCRPC 1.13; and by continuing to represent both Parish and Parish Economics when a conflict of interest existed between the two. Second, putative class plaintiffs assert a professional malpractice claim against defendants. Putative class plaintiffs assert that they were members of Parish Economics and their malpractice claim is based on the same grounds as those asserted by the receiver above, except that putative class plaintiffs also take issue with defendant Pearlman continuing as a trustee of the Trust when a conflict of interest existed between Parish and Parish Economics. Plaintiffs' third and fourth claims allege that defendants breached fiduciary duties to plaintiff receiver and putative class plaintiffs. Finally, putative class plaintiffs assert a negligent misrepresentation claim against defendants, alleging that defendant Pearlman should have known that the investor members of Parish Economics would rely on the representations made by Pearlman with respect to the legitimacy of Parish and how he operated Parish Economics. Plaintiffs attached numerous documents to their complaint, including investment pool agreements, an investor's guide, the receiver's interim report, and an affidavit of John P. Freeman.[4]

---

[4]South Carolina Code of Laws § 15-36-100(B) requires a contemporaneous affidavit of an expert in actions alleging professional negligence.

On May 4, 2010, defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, 1453, the All Writs Act, 28 U.S.C. § 1651(a), and the order appointing plaintiff Gregory Hays as receiver for Parish Economics, LLC. Defendants subsequently filed the instant motion to dismiss on May 11, 2010. In their motion, defendants argue that putative class plaintiffs' professional malpractice claim should fail because the putative class plaintiffs, the investors in Parish Economics, did not have an attorney-client relationship with defendants. Defendants argue that they did not owe a fiduciary duty to putative class plaintiffs because those individuals were not beneficiaries under the Trust created by defendants. Defendants argue that plaintiff receiver's professional malpractice and breach of fiduciary duty claims should be barred by the doctrines of *in pari delicto* and unclean hands. Lastly, defendants claim that putative class plaintiffs' negligent misrepresentation cause of action should fail because defendants did not make any false representations and the losses class members suffered were caused by their purchase of valueless securities from Parish, not as a result of representations made by defendants.

Defendants attached several documents to their motion to dismiss, including the Trust document, the related buy-sell agreement between the Trust and Parish Economics, and a February 5, 2008 letter from J. David Dantzler to Lawrence E. Richter, Jr., indicating that the receiver did not believe that defendant Pearlman had actual knowledge of Parish's fraud, but that he may be liable for professional negligence and negligent misrepresentation.

## II. DISCUSSION

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (internal citations omitted).

Rule 12(b)(6) governs motions asserting a "failure to state a claim upon which relief can be granted." In order,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. The United States Supreme Court held that,

> the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation.")

Id. at 1949-50 (internal citation and question marks omitted). The Court added that "only

a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950 (internal citation omitted). The Court continued:

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

Id. (internal citations omitted).

In a Rule 12(b)(6) motion to dismiss, "courts may consider the complaint itself and any documents attached to it." CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) (citing CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 567 F. Supp. 2d 824, 831 (E.D. Va. 2008)). The Fourth Circuit "has also held that courts may consider a document that the defendant attaches to its motion to dismiss if the document "'was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.'" Id. (quoting Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)).

For the purposes of this order, the court will first address defendants' motion to dismiss in reference to plaintiff receiver's claims. The court will then briefly address putative class plaintiffs' claims.

    **A.**    ***In Pari Delicto*, Unclean Hands, and the Statute of Limitations Defenses Against Plaintiff Receiver's Claims**

Defendants argue that plaintiff receiver is barred from asserting claims of professional malpractice and breach of fiduciary duty based on the doctrines of *in pari delicto* and unclean hands. Defendants also argue that plaintiff receiver's claims are

10

barred by the statute of limitations.

"The doctrine of *in pari delicto* is '[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'" Myatt v. RHBT Fin. Corp., 635 S.E.2d 545, 547 (S.C. Ct. App. 2006) (quoting Black's Law Dictionary 794 (7th ed. 1999)). In Myatt, the South Carolina Court of Appeals squarely considered the operation of *in pari delicto* on claims brought by a receiver on behalf of receivership entities that were used to carry on a Ponzi scheme against defendants who assisted in the execution of that scheme. The receiver asserted multiple claims, including breach of fiduciary duty, negligence, and negligent supervision, on behalf of the receivership entities' against a bank that had a business relationship with the orchestrator of the Ponzi scheme. Id. at 546-47. The trial court granted summary judgment to the defendants, concluding that *in pari delicto* barred all of the receiver's claims. See id. The court of appeals agreed, holding "that, in the absence of a fraudulent conveyance case, the receiver of a corporation used to perpetuate fraud may not seek recovery against an alleged third-party co-conspirator in the fraud." Id. at 548.

The Myatt court expressly relied on a pair of Seventh Circuit decisions considering the effect of *in pari delicto* in actions brought by a receiver on behalf of receivership entities against co-conspirators in the fraud. In Scholes v. Lehman, Michael Douglas orchestrated a Ponzi scheme using various limited partnerships and corporations he controlled. 56 F.3d 750, 752 (7th Cir. 1995). The federal government brought criminal charges against Douglas, and he was sentenced to a term of imprisonment on those charges. Id. The SEC also brought a civil enforcement action against Douglas and

three of his corporations. The federal district court appointed a receiver for Douglas and the corporations. Id. In an attempt to recover assets of the scheme, the receiver brought fraudulent conveyance claims against Douglas's ex-wife, one of the investors in the scheme, and five religious corporations. Id. at 753. The district court granted summary judgment for the receiver on the fraudulent conveyance claims. Id.

The Seventh Circuit first considered whether the receiver had standing to bring the fraudulent conveyance suit. Id. The court quickly rejected the receiver's argument that he had power to bring claims on behalf of the victims of the Ponzi scheme. Rather, the court reasoned that he only had power to pursue claims on behalf of the individual and entities that were subject to the receivership. Id. The court further concluded that the receivership entities did in fact have claims against the defendants for fraudulent conveyance because they, as separate legal entities from the orchestrator of the scheme, were harmed by the wrongful transfers. See id. at 754. More importantly for the purposes of this case, the Seventh Circuit held the defense of *in pari delicto* did not bar the claims because Douglas–the fraudulent scheme's orchestrator–was not part of the suit. Id. The Seventh Circuit explained:

> [T]he wrongdoer must not be allowed to profit from his wrong by recovering property that he had parted with in order to thwart his creditors. That reason falls out now that Douglas has been ousted from control of and beneficial interest in the corporations. The appointment of the receiver removed the wrongdoer from the scene. The corporations were no more Douglas's evil zombies. Freed from his spell they became entitled to return of the moneys—for the benefit not of Douglas but of innocent investors—that Douglas had made the corporations divert to unauthorized purposes. . . . Put differently, the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated.

Id. Thus, the Seventh Circuit concluded the receiver's suit was proper and proceeded to address the remaining issues in the appeal, eventually reversing the district court in part on other grounds. Id. at 763.

The Seventh Circuit revisited Scholes in Knauer v. Jonthan Roberts Financial Group, 348 F.3d 230 (7th Cir. 2003). Knauer was appointed in an SEC enforcement action as receiver over two entities, Heartland and JMS Investment Group ("JMS"), that were involved in executing a Ponzi scheme. Heartland and JMS were formed by Kenneth R. Payne, who was assisted by Daniel Danker, both of whom were registered representatives of the five broker-dealers (the defendants) who the receiver sued on behalf of Heartland and JMS. Id. at 231-32. The receiver asserted various claims against the defendants, including control person liability under the federal securities laws and vicarious liability because Payne and Danker were their agents. Id. at 232. The district court granted the defendants' motion to dismiss, concluding the receiver had no standing to assert claims on behalf of investors and that *in pari delicto* barred the claims the receiver asserted on behalf of the receivership entities. Id. at 233.

The Seventh Circuit affirmed. In doing so, the court distinguished Scholes because the receiver in that case had brought fraudulent conveyance claims:

> This case . . . presents a different equitable alignment [than Scholes]. The key difference, for purposes of equity, between fraudulent conveyance cases such as Scholes and the instant case is the identities of the defendants. The receiver here is not seeking to recover the diverted funds from beneficiaries of the diversions (e.g., the recipients of Douglas's transfers in Scholes). Rather, this is a claim for tort damages from entities that derived no benefit from the embezzlements, but that were allegedly partly to blame for their occurrence. In the equitable balancing before us, we find Scholes less pertinent than the general . . . rule that the receiver stands precisely in the

shoes of the corporations for which he has been appointed.

Id. at 236. Because the Seventh Circuit concluded that the receivership entities' fault for the wrong was at least equal to the parties they were suing, *in pari delicto* prevented their suit to recover damages incurred as a result of the Ponzi scheme. Id. at 237.

The instant case is in line with Knauer. Plaintiff receiver seeks tort damages from defendant Pearlman who derived no alleged benefit from Parish's Ponzi scheme; however, he is alleged to have been partly to blame for the occurrence of the Ponzi scheme. As held by the court in Myatt, "in the absence of a fraudulent conveyance case, the receiver of a corporation used to perpetuate a fraud may not seek recovery against an alleged third-party co-conspirator in the fraud." 635 S.E.2d at 548. Plaintiff receiver's claims are barred by the doctrine of *in pari delicto*.[5] As a result, it is unnecessary to reach defendant's more tenuous defenses of unclean hands and expiration of the statute of

---

[5] The court recognizes that the *in pari delicto* analysis in the instant case reaches a different result than this court's May 12, 2008 order in SEC v. Parish, 2:07-CV-919-DCN; however, in that case, the receivership had valid fraudulent conveyance claims, unlike the instant case. The relevant portion of the May 12 order reads:

> The receiver has *standing* to assert any claims held by the receivership entities against CSU, including claims for negligent supervision, control person liability, and fraudulent conveyance. If the receiver brought those claims against CSU, the university would certainly raise *in pari delicto* as a defense. Under Myatt, *in pari delicto* may bar the receiver's non-fraudulent conveyance claims. However, the receivership entities (and, consequently, the receiver) possess valid fraudulent conveyance claims that are included as part of the settlement agreement. Parish has been removed from control over Parish Economics and Summerville Hard Assets. Thus, under the South Carolina Court of Appeals' decision in Myatt and the Seventh Circuit's decision in Scholes, the receiver can bring claims on the entities' behalf for fraudulent conveyance without implicating *in pari delicto*.

May 12, 2008 Order at 13.

limitations.

### B. Putative Class Plaintiffs' Professional Malpractice, Breach of Fiduciary Duty, and Negligent Misrepresentation Claims

Having thoroughly considered the parties' written and oral submissions in light of the standard set forth in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the court denies defendants' motion to dismiss as to putative class plaintiffs' professional malpractice, breach of fiduciary, and negligent misrepresentation claims.

### III. CONCLUSION

For the foregoing reasons, the court **GRANTS** defendants' motion to dismiss as to plaintiff receiver's professional malpractice and breach of fiduciary duty claims. The court **DENIES** defendants' motion to dismiss as to the putative class plaintiffs' professional malpractice, breach of fiduciary duty, and negligent misrepresentation claims.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**November 2, 2010
Charleston, South Carolina**